60 So.2d 673 (1952)
RAGG et al.
v.
HURD.
Supreme Court of Florida, Special Division B.
July 18, 1952.
Rehearing Denied October 13, 1952.
Blackwell, Walker & Gray, Miami, for appellants.
Hall & Hedrick, Miami, for appellee.
ROBERTS, Justice.
This is an appeal from a verdict and judgment against the appellants as the owners of an automobile which struck and injured the plaintiff-appellee while it was being driven by one Harper under circumstances hereinafter related. The principal question here is the ownership vel non of the car by the appellants.
The testimony adduced at the trial shows that the appellants owned and operated a used car lot; that Harper on Sunday, January 15, 1950, negotiated with one of their salesmen, Campau, for the purchase of a used car; that the salesman fixed the price of the car at $185 if the appellants repaired a defective gear shift, and at $160 if Harper purchased the car without such repairs; that Harper wanted to drive the car around to see if there was anything more wrong with it and whether he wanted to take it for $160 or for $185; that Harper then drove the car away from the appellants' lot, alone, with instructions from Campau to return the car to the lot before closing time that day if he did not want the car, or else to come in the next morning at the opening hour of business to close the transaction. As to the circumstances under which Harper took the car away, Campau testified as follows: "* * * so a little before 5 o'clock he called up and told me he would take the automobile for $160 the way it set, see. He said, `Is it all right for me to drive the car overnight?' and I said, `Sure;' well, he said he will be back in the morning and buy it, see. Now, that is the way the transaction went." Harper testified that he tried to reach Campau Monday morning to discuss a further reduction in price, but was unable to do so. Harper did testify, however, that at least by Tuesday he advised Campau that he would take the car, and that Campau told him that he (Campau) was "responsible for the car being gone" and for Harper to "get down there and pay for it."
*674 Harper did not return the car nor did he come in to pay for it at the appointed time. Upon learning of the transaction, one of the appellants instructed Campau to go out and either get the car or get the money. Evidently before this had been accomplished, Harper struck down the appellee while driving the car, on Thursday, January 19, 1950. When they learned of the accident, appellants' manager telephoned and asked the investigating officer where the car was located and if he could get the car and was informed that he could, so long as he showed the proper papers on it, to which appellants' manager replied that he would. It was also shown that the appellants filed embezzlement charges against Harper seven days after the accident occurred.
It may be conceded, as contended for by appellants, that there was a meeting of the minds of the parties for the purchase and sale of the car; but we are not persuaded that the title had, therefore, passed to Harper at the time of the accident.
"Upon a sale of personalty for cash, payment is generally a condition of the passing of title, * * *". 46 Am.Jur., Sales, Sec. 447, page 613. The usual and customary procedure of appellants in selling a car was either to get the cash from the customer or to finance the sale through a loan company. There is nothing in the record to show that they intended to depart from their usual business practice in this particular transaction. In fact, the entire course of conduct of the appellants discloses an intention not to part with the title to the car until the cash payment had actually been received by them; and we think the jury had the right to so find. There was, then, no error in holding the appellants liable for the damages inflicted by Harper while the car was in his possession. Lynch v. Walker, 159 Fla. 188, 31 So.2d 268.
It should be noted that our conclusion of this matter is based on the common-law rules respecting sales, and not on the theory, advanced by the appellee, that the provisions of the Florida Motor Vehicle Law, Chapter 319, Florida Statutes, same F.S.A., have abrogated such rules and that a noncompliance with such statute renders an attempted sale void. There is nothing in Chapter 319 to show that the Legislature intended that the provisions thereof respecting the endorsement and transfer of certificates of title or registration upon sale of a motor vehicle provide an exclusive method of transferring title to motor vehicles, and we do not think the Legislature so intended.
The appellant also contends here that the damages awarded by the jury were excessive. This was primarily a question for the jury, and it has not been made to appear that the jury was influenced by passion, prejudice or other improper motives, nor that there was no reasonable relation between the verdict and the damages proved. Their determination of this matter should not, then, be disturbed. Margaret Ann Super Markets, Inc., v. Scholl, 159 Fla. 748, 34 So.2d 238; Breedings' Dania Drug Co. v. Runyon, 147 Fla. 123, 2 So.2d 376.
The other matters and questions posed by appellants have been carefully considered, and no reversible error has been found.
For the reasons stated, the judgment appealed from should be and it is hereby
Affirmed.
SEBRING, C.J., MATHEWS, J., and FUTCH, Associate Justice, concur.